IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AMELIA HENISE,          :     Case No. 4:06-CV-2469
       Plaintiff,     :
                 :
     v.           :     (Judge Jones)
                 :
YORK COUNTY BOARD OF   :
COMMISSIONERS,       :
et al.,              :
       Defendants.   :

## MEMORANDUM AND ORDER

### June 8, 2007

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before this Court is a Motion to Dismiss ("the Motion"), filed by all

Defendants[1] to this action on January 30, 2007.  (Rec. Doc. 4).  For the reasons that

follow, the Motion will be granted in part and denied in part.

## PROCEDURAL HISTORY:

On December 22, 2006, Plaintiff Amelia Henise ("Plaintiff" or "Henise")

filed her Complaint (doc. 1) in the instant action.

On January 30, 2007, Defendants filed the instant Motion.  (Rec. Doc. 4).

As the Motion has been fully briefed, it is ripe for disposition.

---

[1] Defendants to this action are the York County Board of Commissioners, the York County Human Services Department, the York County Children and Youth Services, Paula Barr, and William Ledbetter.

**STANDARD OF REVIEW:**

In considering a motion to dismiss, a court must accept the veracity of a plaintiff's allegations.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990).  In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims."  Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also District Council 47 v. Bradley, 795 F.2d 310 (3d Cir. 1986).

**FACTUAL BACKGROUND:**

As is required by the standard of review applicable to the Motion, the following recitation of the facts is based on the averments in Plaintiff's Complaint. (Rec. Doc. 1).

Plaintiff began working as a Caseworker for the York County Children and Youth Services ("YCCYS") in January 2000.  Plaintiff claims that when she began work at YCCYS, she noticed that of the 140 YCCYS employees, only herself and

2

nine (9) others were African-American, despite the fact that many of the agency's clients were African-American.

Plaintiff's first immediate supervisor at YCCYS was Defendant William Ledbetter ("Defendant Ledbetter" or "Ledbetter").  In December 2003, Plaintiff filed an apparently internal complaint against Defendant Ledbetter as a result of his alleged use of foul language when speaking to her, which Plaintiff believes "was racially motivated as he did not speak to his Caucasian employees in that fashion." (Rec. Doc. 1, ¶ 16).  Plaintiff also alleges that during her time as a Caseworker, she "was the victim of and witnessed, several instances that she believes and therefore avers were racially motivated."  (Id. at ¶ 18).

Despite the alleged environment to which she was subjected, Plaintiff avers that she performed her job as a Caseworker proficiently.  This appears to be confirmed by Plaintiff's successful bid for an Intake Supervisor position, which she began in February 2004.

Following her promotion to Intake Supervisor, and specifically from August 2004 to October 2004, Amy Abel ("Ms. Abel"), a Caucasian, was Plaintiff's immediate supervisor.  Ms. Abel reported to the Director of YCCYS, James Rebert ("Mr. Rebert"), also a Caucasian.  However, Plaintiff alleges that despite the fact that Defendant Ledbetter was no longer Plaintiff's supervisor, he followed and

3

harassed her, pointing out any alleged mistake that Plaintiff made.

From late-October 2004 to January 2005, Mr. Rebert took a medical leave, during which time Barbara Eubanks ("Mrs. Eubanks"), an African-American, and Defendant Paula Barr ("Defendant Barr" or "Barr") served as interim Co-Directors. Plaintiff avers that Defendant Barr:

> brought with her to the Co-director's position racial issues from her past. Defendant Barr had kept secret for 26 years her husband's involvement in Lillie Belle Allen's racially motivated murder in 1969. Defendant Barr's secret was exposed when the murder trial was finally held in 2003 just blocks from YCCYS's offices.

(Id. at ¶ 26). Plaintiff also avers that "[D]efendant Barr used her co-director's position to lash out at [sic] because she was hurt by this public disclosure of a secret kept so long." (Id. at ¶ 27). Indeed, Plaintiff contends that because of the secret and/or its disclosure, Barr harbored ill-will toward African-American women, including Plaintiff. Plaintiff claims that as a result, Barr simultaneously excluded Plaintiff from supervisory meetings and also used Plaintiff's "occasional failure to attend supervisory meetings because of her work load as a reason to circumvent [Plaintiff's] supervisory authority." (Id. at ¶¶ 29-30).

Notably, Plaintiff also alleges that Defendants Barr and Ledbetter "had a relationship outside of their work relationship. They supported each other in their harassment of [Plaintiff]." (Id. at ¶ 28). In support thereof, Plaintiff avers that

even after Barr was appointed Co-Director, she made no attempt to stop Ledbetter's harassment of Plaintiff.  Plaintiff also avers that Defendants "Barr and Ledbetter were working together to create a work environment so hostile that [Plaintiff] would resign."  (Id. at ¶ 40).

As a result of Defendant Barr's alleged treatment of Plaintiff, Plaintiff approached Mrs. Eubanks to complain about Barr.[2]  Plaintiff alleges that when Barr found out about her complaints to Mrs. Eubanks, Barr was upset, so she went to Plaintiff's "office and began loudly banging on the door."  (Id. at ¶ 32).  Plaintiff claims to have been "terrified and afraid to leave her office" as a result of Barr's behavior, and she further claims that when Barr was confronted about the incident, "Barr used the pretext of asking [Plaintiff] for information relating to vacation time."  (Id. at ¶ 33).

Plaintiff also avers that Defendant Barr's ill-treatment toward her continued, with Defendant Barr's meetings with Plaintiff being held outside the presence of Mrs. Eubanks, despite Plaintiff's request therefor.  Plaintiff also avers that during these meetings, Barr had Ms. Abel attend, and that this violated company policy.

As a result of the alleged treatment of Defendants Barr and Ledbetter,

---

[2] Plaintiff also notes that Mrs. Eubanks "does not like to involve herself in racial conflict between employees of the agency.  It is believed and therefore averred that co-director Eubanks herself is subjected to subtle pressure not to intervene when a Caucasian supervisor harasses an African-American."  (Id. at ¶ 38).

Plaintiff avers that she sought medical treatment for work-related stress. Indeed, Plaintiff contends that her stress levels increased as the hostility of the environment in which she worked increased, ultimately causing her to take a medical leave of absence.

Meanwhile, in November 2004, Defendant Barr asked that she be returned to the position of Senior Manager of the Protective Unit, effectively immediately, and YCCYS granted her request. Plaintiff contends that, nevertheless, in December 2004, Barr continued to discipline Plaintiff, and that "no one challenged her motives or lack of authority to do so." (Id. at ¶ 44).

Also in December 2004, Plaintiff was allegedly permitted by her doctor to return to working partial days at YCCYS. Apparently upon her return, Plaintiff was issued two (2) disciplinary warnings in three (3) days: the first was signed by Defendant Barr, the second by Ms. Abel. Plaintiff contends that Barr's warning was issued based upon the pretext that Plaintiff failed to follow the chain of command, but was actually retaliation for a complaint that Plaintiff had filed against Barr. Plaintiff contends that the second warning was "allegedly for disrespecting her supervisor." (Id. at ¶ 47).

Plaintiff next avers that she contacted Sharon Luker ("Ms. Luker"), the Human Resources Director of YCCYS, and filed an in-house discrimination

6

grievance against Defendant Barr.  However, it is not clear whether this grievance

is the aforementioned complaint which Plaintiff claims to have been retaliated

against for lodging, or whether it is a separate, subsequent complaint.  Regardless,

Plaintiff alleges that despite Ms. Luker's obligation, pursuant to Civil Service

Procedure, to report Plaintiff's discrimination claims to the Civil Service

Grievance Board, Ms. Luker failed to do so, and instead investigated Plaintiff's

discrimination claims herself, with the assistance of YCCYS attorney Mr.

Flannelly.  Plaintiff believes Ms. Luker's actions were an attempt to cover up

Plaintiff's claims.

In addition, Plaintiff contends that she "received good employment reviews

for every year she has been employed until recently."  (Id. at ¶ 52).  She then

alleges that she has also suffered retaliation as a result of reporting that supervisors

at YCCYS, including Defendants,[3] had either directed or themselves altered files

and spent agency funds improperly.

Finally, Plaintiff notes that she filed complaints with the "EEOC and PHRC

and ultimately received right to sue letters."  (Id. at ¶ 55).  She also notes that she

was denied Workers' Compensation and "has fought to obtain it for her medical

---

[3] Plaintiff's Complaint does not specify to which Defendants she refers, but we think it reasonable to assume that she refers to the individual Defendants, Ledbetter and Barr.

leave."  (<u>Id.</u> at ¶ 56).  In addition, she alleges that Defendants[4] "had a part in the Worker[s'] Compensation denial."  Moreover, she alleges that during Workers' Compensation hearings, "various witnesses [] disclosed that the defendants knew of and acknowledged the racism at the agency."  (<u>Id.</u> at ¶ 57).

Plaintiff remains employed at YCCYS, and she maintains that the actions of Defendants[5] are ongoing.

## <u>DISCUSSION</u>:

As noted above, Plaintiff's Complaint contains nine (9) Counts, all of which appear to be asserted against all five (5) Defendants to this action:[6] Count I alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, <u>et seq.</u>; Count II alleges violations of the Civil Rights Act of 1866 and 1871, 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986; Count III alleges violations of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, <u>et seq.</u>; Count IV alleges violations of the Pennsylvania Whistleblower Law, 43 P.S. § 1421, <u>et seq.</u>;

---

[4] Once again, we cannot be sure to which Defendants Plaintiff is referring.

[5] We assume that this is a reference to all Defendants.

[6] Plaintiff's allegations in Count VII involve "Barr, Ledbetter, and others" (<u>id.</u> at ¶ 99), and, thus, may not be asserted as against the other three (3) Defendants, but we can not be sure of to whom "and others" refers.  Accordingly, we assume that Count VII is alleged against all five (5) Defendants.  However, for the reasons stated below, whether VII was intended as against all Defendants or only the individual Defendants is immaterial in light of our disposition of the instant Motion.

Count V appears to allege claims for false light; Count VI appears to allege claims for breach of contract; Count VII appears to allege claims for intentional and negligent interference with contractual relations; Count VIII appears to allege claims for intentional and negligent misrepresentation; and Count IX appears to allege claims for conspiracy.

The instant Motion (doc. 4) seeks dismissal of many specific portions of Plaintiff's Complaint (doc. 1). In support thereof, Defendants make a multitude of arguments. (Rec. Docs. 5, 12). We will consider these arguments, as well as Plaintiff's counter-arguments (doc. 10), in turn.

We begin by considering Defendants' first argument, that the York County Human Services Department ("Human Services") and YCCYS are not proper parties to this action because they are not entities separate from the County of York ("the County"). (Rec. Doc. 5 at 5-6). In response, Plaintiff argues that the authorities cited by Defendants in support of said argument are distinguishable because they all involve dismissal of police department defendants on the grounds that they were integral parts of the cities sued.[7]  (Rec. Doc. 10 at 3).

---

[7] Plaintiff also argues that Human Services and YCCYS "may operate under an indemnity agreement with the county, which information is not yet available to plaintiff, thus to dismiss the agencies at this stage could extinguish that avenue of recovery." (Rec. Doc. 10 at 3-4). However, in their Reply Brief, Defendants aptly counter this argument by noting that "in the event that any such indemnity agreement existed, which is denied, that avenue of recovery would not be Plaintiff's to pursue, but rather the County's, from a contractual standpoint." (Rec. Doc.

Having reviewed the authorities cited by both parties in support of their arguments as to this issue, we find dismissal of YCCYS and Human Services to be appropriate because the vast majority of authorities on this issue have granted similar dismissals.[8]   See, e.g., Martinez v. Winner, 771 F.2d 424, 444 (10th Cir. 1985); Post v. City of Fort Lauderdale, 750 F. Supp. 1131 (S.D. Fla. 1990); Ragusa v. Streator Police Dept., 530 F. Supp. 814, 815 (N.D. Ill. 1981); Missouri ex rel. Gore v. Wochner, 475 F. Supp. 274, 280 (E.D. Mo. 1979).  In fact, even assuming arguendo that the aforementioned cases are distinguishable on the grounds that they involve police department and city defendants, a recent decision by a colleague in the Eastern District of Pennsylvania applied the same rationale as that in the above cases to a case involving a county agency, and we find such

---

12 at 9).  Thus, we see no need for any further consideration of it herein.

[8] We recognize that in the primary case upon which Plaintiff relies, the court did not dismiss the "Sunnyview Home of Butler County" because it had "no evidence as to its legal capacity as an independent entity . . . ."  Serv. Employees Int'l Union v. County of Butler, 306 F. Supp. 1080, 1083 (W.D. Pa. 1969).  However, in light of the more recent authorities discussed herein, we do not find said authority persuasive because it is nearly forty (40) years old and it cites no authority in support of its finding that the "Sunnyview Home of Butler County" should not be dismissed.  See id.
    Similarly, we also find the only other authority upon which Plaintiff relies, Alba v. Housing Authority of City of Pittston, 400 F. Supp. 2d 685 (M.D. Pa. 2005), to be distinguishable, for two reasons.  First, in Alba, the court's determination that the Housing Authority was a separate entity from the city of Pittston was based upon the Housing Authority having a separate Articles of Incorporation.  Id. at 700.  Second, as Defendants note, 53 P.S. § 5601, et seq., also supports Alba's outcome because it provides for the creation of such "authorities" which are defined therein as "bod[ies] politic and corporate . . . ."  Neither of these distinguishing characteristics have been alleged here.

application both appropriate and persuasive.[9]  See Korff v. Feldenkreis, 1999 U.S.

Dist. LEXIS 1780, at *31 n.5 (E.D. Pa. Feb. 8, 1999).  Accordingly, YCCYS and

Human Services will be dismissed from this action.

Next, we consider Defendants' argument that "[b]ecause there is no

individual liability under either Title VII or the PHRA, the allegations against Barr

and Ledbetter in their individual capacity in Counts I and III of Plaintiff's

Complaint must be dismissed."  (Rec. Doc. 5 at 6 (emphasis omitted)).  Plaintiff

counters by arguing that individuals are proper defendants under the PHRA, and,

thus, Barr and Ledbetter, in both their individual and official capacities, should

remain Defendants to those claims.  (Rec. Doc. 10 at 4 (citing Dici v.

Commonwealth of Pennsylvania, 91 F.3d 542, 552-53 (3d Cir. 1996); Holocheck

v. Luzerne County Head Start, Inc., 385 F. Supp. 2d 491, 496-87 (M.D. Pa. 2005)).

Notably, Plaintiff does not argue that Defendants Barr and Ledbetter should remain

Defendants, in their individual capacities, to the Title VII claims.  Further, in their

Reply Brief, Defendants concede that "[u]nder the case law cited by the Plaintiff, it

would appear that the PHRA does contemplate the possibility of individual liability

under § 955(e) . . . ," and, thus, Defendants "withdraw their motion to dismiss the

---

[9] Moreover, we note that in this Court's experience, it is well-established that Children and Youth Agencies in Pennsylvania are not independent entities from the County for which they operate.  Thus, it is our view that Plaintiff had the burden of alleging York County to be the exception if such were the case, which we do not believe it to be.

PHRA claims against Barr and Ledbetter individually." (Rec. Doc. 12 at 9-10).

In light of the parties' concessions as to Counts I and III, we will dispose of the Motion with respect to those Counts as follows. First, as Plaintiff has failed to argue that the Title VII claims against Defendants Barr and Ledbetter, in their individual capacities, remain viable, she has impliedly conceded that they do not. Accordingly, we will dismiss Count I as against Defendants Barr and Ledbetter, in their individual capacities. However, they remain Defendants as to Count I in their official capacities. Second, because Defendants have withdrawn that portion of the Motion which sought to dismiss Count III against Defendants Barr and Ledbetter in their individual capacities, they will remain Defendants as to Count III in both their individual and official capacities.

Third, we consider Defendants' argument that Plaintiff's 42 U.S.C. § 1983 ("§ 1983") and negligence claims "should be dismissed with prejudice to the extent that they related to matters which occurred more than two years prior to the filing of the underlying litigation" because they are outside of the relevant statute of limitations. (Rec. Docs. 4 at 5 at 8 (emphasis omitted); 12 at 10-11). Rather than arguing that Defendants inaccurately concluded that a two (2) year statute of

limitations is applicable to these claims, Plaintiff asserts[10] that the continuing

violations doctrine prevents the statute of limitations from barring any such

claims.[11]  (Rec. Doc. 10 at 5-6 ("Plaintiff's Section 1983 Civil Rights Claims and

Negligence Claims Are Timely.")).

Our review of the submissions reveals that, as Plaintiff has again impliedly

conceded[12] by virtue of her failure to offer counter-argument on this issue,

Defendants are correct in their assertion that the applicable statute of limitations for

Plaintiff's § 1983 claims is two (2) years under the applicable Pennsylvania law.

---

[10] As Defendants argue, Plaintiff also appears to assert that the "filing of the EEOC charge should toll the statute of limitations on her § 1983 claims."  (Rec. Doc. 12 at 14; see also Rec. Doc. 10 at 6 ("she could not file this claim until she had obtained a right to sue letter from the EEOC.")).  However, to the extent that Plaintiff makes such an argument, we find it unpersuasive as no administrative exhaustion requirement applies to § 1983 and negligence claims, and the pendency of certain claims before the EEOC does not toll the statute of limitations on any other claims.  See, e.g., Padilla Cintron v. Rosello Gonzalez, 247 F. Supp. 2d 48, 55 (D. Puerto Rico 2003); Reese v. City of Emeryville Fire Dept., 746 F. Supp. 987, 988 (N.D. Cal. 1990).

[11] Plaintiff cites no authority in support of her argument that the continuing violations doctrine applies to state tort claims, such as negligence and false light, which will be discussed below.  Further, the Court is not aware that any such authority exists.  However, we need not reach the question of whether the continuing violations doctrine can be applied as an exception to the statute of limitations for state tort claims because we find that the allegations in the Complaint are sufficiently ambiguous as to prevent us from dismissing Plaintiff's negligence and false light claims on the grounds that any applicable statute of limitations bars them. Accordingly, no further discussion of their dismissal based thereupon is contained herein.

[12] We note that, in the future, express concession to such undisputed issues would be appreciated. While we admire and respect vigorous advocacy, we encountered numerous instances in deciding the instant Motion where Plaintiff's counsel, in the interest of candor to the Court, should have conceded a point for which there is no supporting authority. Far from showing weakness, this demonstrates appropriate consideration for the task faced by the Court in reviewing such a multi-faceted action.

See Kost v. Kozakiewicz, 1 F.3d 176, 189-90 (3d Cir. 1993).  Thus, a

determination as to the continuing violations doctrine's applicability is required to

ascertain whether Plaintiff's § 1983 claims are barred to the extent that they relate

to matters prior to December 22, 2004, which is the date two (2) years prior to the

initiation of the instant action.  As both parties also appear to agree, to avail

themselves of the continuing violations doctrine, plaintiffs must:

> establish that the defendant's conduct is 'more than the occurrence of
> isolated or sporadic acts.'  Regarding this inquiry, we have recognized that
> courts should consider at least three factors: (1) subject matter – whether the
> violations constitute the same type of discrimination, tending to connect
> them in a continuing violation; (2) frequency – whether the acts are
> recurring or more in the nature of isolated incidents; and (3) degree of
> permanence – whether the act had a degree of permanence which should
> trigger the plaintiff's awareness of and duty to assert his/her rights and
> whether the consequences of the act would continue even in the absence of a
> continuing intent to discriminate.

Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2002) (internal citations

omitted).  In Cowell, the Court of Appeals for the Third Circuit also specifically

noted: "Most importantly, the doctrine is an equitable one and requires a factual

analysis that will be different for each case."  Id. at 293.

As a fact-intensive inquiry is required to determine the continuing violation

doctrine's applicability to the instant action, and as we find that it cannot be

conducted at this juncture given the frequently un-dated, and sometimes

ambiguous, allegations in Plaintiff's Complaint, Plaintiff's § 1983 claims should

survive the instant Motion.  Indeed, our review of the Complaint leads us to conclude that, at this time, we can not say that the continuing violations doctrine could not apply, under any circumstances, to said claims.[13]

Next, we consider Defendants' argument that Plaintiff's conspiracy claims, under either § 1983 or § 1985(3), should be dismissed because Plaintiff failed to plead them with the appropriate particularity.  (Rec. Docs. 5 at 8-11; 12 at 15-17). Indeed, Defendants essentially ask us to apply a heightened pleading standard to such conspiracy claims.  In response, Plaintiff argues that no such heightened pleading standard exists and that her conspiracy claims should be permitted to continue as they satisfy Rule 8(a) of the Federal Rules of Civil Procedure.  (Rec. Doc. 10 at 6-8).

The Supreme Court has very recently "once again reiterate[d], . . . as [it] did unanimously in Leatherman, Swierkiewicz, and Hill - that adopting different and more onerous pleading rules to deal with particular categories of cases should be done through established rulemaking procedures, and not on a case-by-case basis by the courts."  Jones v. Bock, ___ U.S. ___, 127 S. Ct. 910, 926 (2007).  See also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507

---

[13] However, we are confident that defense counsel's deposition of Plaintiff, and other discovery mechanisms, will render the facts required to make this determination more clear.

U.S. 163 (1993); <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506 (2002); <u>Hill v.</u>

<u>McDonough</u>, 547 U.S. ___, 126 S. Ct. 2096 (2006).  As no Federal Rule of Civil

Procedure requires a heightened pleading standard for conspiracy claims, we

review Plaintiff's Complaint only to determine whether the averments therein

satisfy the requirement of Rule 8(a) of the Federal Rules of Civil Procedure at issue

here, provision of "a short and plain statement of the claim showing that the

pleader is entitled to relief . . . ."  FED. R. CIV. P. 8(a).

Upon our review, we conclude that Rule 8(a) has been satisfied by Plaintiff's

allegations.  For example, in the Complaint, Plaintiff avers that the relationship

between Defendants Barr and Ledbetter went beyond that of a professional nature.

(Rec. Doc. 1, ¶ 28).  She also avers that they worked together to create a hostile

work environment surrounding Plaintiff.  (<u>Id.</u> at ¶ 40).  Thus, Plaintiff's Complaint

adequately pleads conspiracy claims against Defendants Barr and Ledbetter.  As to

the remaining Defendant, the York County Board of Commissioners ("the Board"),

we acknowledge that Defendants accurately note that the Complaint does not

explicitly aver the role of this Defendant in the conspiracy.  However, at this

juncture, in the interests of caution, we will allow the conspiracy claims to proceed

against all remaining Defendants because Plaintiff has averred that "Defendants"

conspired (doc. 1, ¶ 112), and this is sufficient to satisfy Rule 8(a) of the Federal

Rules of Civil Procedure.[14]

In light of our finding that Plaintiff's conspiracy claims remain viable, we will not dismiss Plaintiff's § 1986 claims on the basis that the underlying § 1985 conspiracy claims failed.  We also find Defendants' second argument for the dismissal of Plaintiff's § 1986 claims unavailing.  Indeed, as Defendants' concede, the Supreme Court has not yet determined whether municipalities are included in the definition of "persons" for the purposes of §§ 1985 and 1986 claims.  Further, we do not find the Third Circuit decision cited by Defendants to definitively stand for the proposition that they are not.  See Gregory v. Chehi, 843 F.2d 111, 118 (3d Cir. 1988).  As to Defendants' third argument, that the statute of limitations bars this claim and the continuing violation doctrine does not apply to prevent such application, we are unpersuaded at this time.  Indeed, for all of the reasons aforestated in our discussion of this doctrine's application to Plaintiff's § 1983 claims, we will allow Plaintiff's § 1986 claims to proceed.

Thus, we move to consideration of Defendants' sixth argument, that "Plaintiff has failed to state a cause of action in Counts V and VII through IX against the Board [and Defendants Barr and Ledbetter in their official capacities] . .

---

[14] Should discovery warrant a motion for summary judgment on this issue, or any other, we would certainly entertain such at the appropriate time.

. since they are immune from such claims under the Pennsylvania Political

Subdivision Tort Claims Act . . . ."  (Rec. Docs. 5 at 14 (emphasis omitted); 12 at

17 n.4).  Specifically, Defendants argue that municipalities and their employees

cannot be held liable for the intentional torts of municipal employees under the

Pennsylvania Political Subdivision Tort Claims Act ("PSTCA").  (Rec. Docs. 5 at

16; 12 at 19-20).  Plaintiff attempts to rebut Defendants' argument regarding

Counts V and VII through IX with several of her own, including, inter alia:[15]

Defendants' argument is premature because Plaintiff "should be given the

opportunity through discovery to show that her job is 'personal property'" within

the meaning of one of the exceptions to PSTCA applicability.  (Rec. Doc. 10 at 9-

11).

   Upon our review of the parties' arguments and the authorities cited in

_____

[15] Plaintiff also offers two (2) other arguments, which we can dismiss summarily.  First, she argues that until it is "'judicially determined' that the individual defendants' conduct is found to constitute a 'crime, actual fraud, actual malice or willful misconduct' . . . [,] employees must be indemnified for negligent acts[.]" (Rec. Doc. 10 at 11 (quoting 42 Pa. C.S. § 8550)).  We find this argument unpersuasive because with the exception of the potential claims for negligent interference with contract in Count VII and negligent misrepresentation in Count VIII, Plaintiff's claims in Counts V and VII through IX, claims for false light, intentional interference with contract, intentional misrepresentation, and conspiracy, respectively, are intentional torts.  Second, Plaintiff argues that "Defendants have also not identified authority to support the proposition that the 'Tort Claims' Act provides political subdivisions what essentially amounts to free reign to rescind or breach unilaterally . . . contracts." (Rec. Doc. 10 at 10).  This argument is unpersuasive because Defendants have not moved to dismiss Count VI, Plaintiff's breach of contract claim, on the grounds that the PSTCA grants them immunity therefrom.

18

support thereof, we conclude that dismissal of Counts V and IX as against Barr and

Ledbetter in their official capacities and the Board, and dismissal of Count VII's

intentional interference with contract claim and Count VIII's intentional

misrepresentation claims as against same, is appropriate.  We so conclude because,

as Defendants aptly note, municipalities and their employees acting in their official

capacities can not be held liable for the intentional torts of those employees, see

Roskos v. Sugarloaf Twp., 295 F. Supp. 2d 480, 490 (M.D. Pa. 2003); Lakits v.

York, 258 F. Supp. 2d 401, 405 (E.D. Pa. 2003), and Plaintiff's claims in the

aforesaid Counts are intentional torts that do not sound in negligence.

However, in light of Plaintiff's alleged negligent interference with contract

claims in Count VII and her negligent misrepresentation claims in Count VIII, as

well as her argument that she should be afforded the opportunity to pursue

discovery in an effort to show that her job is "personal property" as defined in 42

Pa. C.S. § 8542(b)(2),[16] we will permit the aforementioned claim to remain viable

at this time.

Next, we consider Defendants' argument that Plaintiff's false light claims in

---

[16] Plaintiff has cited authority which tends to show that under certain circumstances, people working in the public sector may have a property interest in their employment.  See, e.g., Perry v. Sindermann, 408 U.S. 593, 599-601 (1972); Abraham v. Pekarski, 537 F. Supp. 858 (E.D. Pa. 1982).  However, we express no opinion on the merits of Plaintiff's argument that her current employ at YCCYS constitutes "personal property" within the definition thereof under the PTSCA, or the ultimate viability of this claim.

Count V, which at this juncture remain viable only as against Defendants Ledbetter and Barr in their individual capacities, should be dismissed entirely because Plaintiff has failed to state a claim.  Specifically, Defendants argue that Plaintiff's failure to specify exactly what private information was disseminated is fatal to these claims; in support thereof, they cite one case from the Philadelphia Court of Common Pleas, <u>Czech v. Gordon</u>, 2004 WL 2426530 (Pa. Com. P. 2004).  (Rec. Doc. 5 at 17-18).  Respectfully, we simply do not find this solitary authority sufficiently persuasive to dismiss these claims at this early stage.

Now we turn to consideration of Defendants' arguments for dismissal of Count VII's negligent interference with contract claims, which at this time remain viable as against only Defendants Ledbetter and Barr in their individual capacities. Defendants offer three (3) arguments in support of such dismissal: 1) Pennsylvania does not recognize a cause of action for negligent interference with contract; 2) "co-employees cannot be held liable for interference with their employer's relationship with other employees;" and 3) to the extent that any such interference occurred more than two (2) years prior to this suit's institution, these claims should be dismissed.  (Rec. Docs. 5 at 18-19).  Plaintiff's primary counter to these arguments appears to be that only employees acting within the scope of their employment are immune from this claim (doc. 10 at 13), a point on which

Defendants do not appear to disagree (docs. 5 at 18; 12 at 25).[17]

Despite Plaintiff's limited opposition to dismissal of her negligent interference with contract claims, we find that they should remain viable at this time because Defendants' remaining arguments thereto are unpersuasive.  Indeed, in contrast to the one (1) authority to which Defendants direct us in support of their argument that said claims are not cognizable in Pennsylvania, see Valley Forge Convention & Visitor's Servs., Inc., 28 F. Supp. 2d 947 (E.D. Pa. 1998), our review of the pending Motion revealed several authorities which indicate that the viability of such claims in Pennsylvania is less than clear.  See, e.g., Windsor Sec., Inc. v. Hartford Life Ins. Co., 986 F.2d 655 (3d Cir. 1992); Getty Refining & Marketing Co. v. MT FADI B, 766 F.2d 829 (3d Cir. 1985); Pennsylvania State Employees Credit Union v. Fifth Third Bank, 398 F. Supp. 2d 317 (M.D. Pa. 2005).  Further, we find that allowing Plaintiff's negligent interference of contract claims to proceed is justified, at least at this time, because the often un-dated allegations in Plaintiff's Complaint prevent us from concluding that under no circumstances did the events surrounding these claims fall within the applicable statute of limitations period.

---

[17] Thus, because we find that discovery could reveal that Defendants Barr and Ledbetter acted outside of the scope of their employment at YCCYS, Defendants' second argument can be dismissed summarily.

21

Finally, Defendants move for the partial dismissal of Plaintiff's punitive damages claims on the grounds that they "cannot be recovered from government entities or under the PHRA."  (Rec. Docs. 5 at 20-22 (emphasis omitted); 12 at 26). Review of the parties' submissions reveals that they appear to agree on this point, and also that Defendants Barr and Ledbetter may be liable for punitive damages in their individual capacities.  (Rec. Docs. 5 at 20-22; 10 at 13-14; 12 at 26).  Thus, at this time, Plaintiff's punitive damages claims against Barr and Ledbetter in their official capacities and the Board will be dismissed; only Plaintiff's punitive damages claims against Barr and Ledbetter in their individual capacities remain viable.[18]

**NOW, THEREFORE, IT IS ORDERED THAT**:

1.  Defendants' Motion to Dismiss (doc. 4) the Complaint is hereby **GRANTED** in part and **DENIED** in part:

    a.  The Motion is **GRANTED** to the extent that:

        i.  YCCYS and Human Services are dismissed from this action.

        ii.  Defendants Barr and Ledbetter, in their individual capacities, are dismissed as Defendants to Count I.  They

---

[18] As a matter of course, we offer no opinion on the ultimate viability of these claims.

remain Defendants to Count I in their official capacities.

iii.    Counts V and IX are dismissed as against Defendants Barr and Ledbetter in their official capacities and as against the Board.  Count VII's intentional interference with contract claims and Count VIII's intentional misrepresentation claims are dismissed as against same. However, the aforesaid claims remain viable as against Defendants Barr and Ledbetter in their individual capacities.

iv.    To the extent that Plaintiff alleged claims for punitive damages against the Board, said claims are dismissed. Any remaining punitive damages claims are viable as against only Defendants Barr and Ledbetter in their individual capacities.

b.    The Motion is **DENIED** to the extent that:

i.    Defendants Barr and Ledbetter, in both their individual and their official capacities, remain Defendants to Count III.

ii.    Plaintiff's §§ 1983 and1986 claims remain viable as

against Defendants Barr, Ledbetter, and the Board.

iii.   Plaintiff's conspiracy claims remain viable as against Defendants Barr, Ledbetter, and the Board.

iv.   Plaintiff's false light claims against Defendants Barr and Ledbetter in their individual capacities remain viable.

v.   Plaintiff's negligent interference with contract claims and negligent misrepresentation claims against Defendants Barr and Ledbetter in their individual capacities remain viable.

2.   The Clerk is directed to **TERMINATE** the York County Human Services Department and the York County Children and Youth Services as Defendants to this action.

s/ John E. Jones III
John E. Jones III
United States District Judge

24